AUGUST B. SWANSON v. AMERICAN HOIST & DERRICK COMPANY.[1]

February 19, 1943.

No. 33,322.

[1] Reported in 8 N. W. (2d) 24.

*Cummins & Cummins* and *Theodore Christianson, Jr.,* for relator.
*Todd, deLambert & Todd,* for respondent.

HENRY M. GALLAGHER, CHIEF JUSTICE.

*Certiorari* to review a decision of the industrial commission awarding compensation and medical benefits to an injured employe. The decision of the commission, one commissioner dissenting, reversed an order of the referee disallowing claimant's petition.

August B. Swanson, the injured employe, was 48 years old at the time of the accident here involved. He had been employed by the American Hoist & Derrick Company as "a first class handy man" since 1917. Aside from having pneumonia when a child and two hernia operations, one in 1921 and one in 1932, he had never been ill so as to prevent him from working.

On the morning of January 31, 1939, while going downstairs in his employer's premises for the purpose of changing his clothes preparatory to commencing work, Swanson fell a distance of about ten steps and landed on the left side of his head. He described the fall thus: "I tripped on something, on something round and my heel got caught on the next step and I went right down, made a nose dive right to the cement floor." He was assisted upstairs and to his employer's office. He described his condition as kind of "dazy, dozy, * * * kind of goofy in the head." While sitting on a chair in the office, Swanson was given a drink of water, whereupon he became unconscious and was removed to St. Luke's Hospital, where he remained for five days. X-rays did not disclose any fractures. He testified that while in the hospital he did not experience any headaches or dizziness but that he felt tired. After leaving the hospital he was at home for about eight weeks. On April 3 he returned to work, but complained of being tired and that he could not sleep. He was given tablets by his physician. During May he was absent from work for a time. During

the next several months he worked part time. On February 1, 1940, he resumed full-time work and continued on that basis until March 20, 1941, when he collapsed on the bathroom floor in his home, hitting his head against the bathtub. He has not been able to work since that time. There is no claim that the fall in the bathroom caused or contributed to his present condition.

It is conceded that employe's disability is total and permanent. It is described by the doctors as a "diffuse degenerative process involving the brain." The medical experts on both sides of the case are agreed as to that. They differ as to the effect the injury of January 31, 1939, had on his present condition. Employe's witness Dr. William H. Hengstler testified that in his opinion the injury "was a contributing factor in the production of his present condition." Dr. Scott, a witness for the employer, testified that, in his opinion, Swanson's condition at the time of the hearing would be "approximately the same whether he had had the accident or not," and that the aggravation of his condition by the accident had been "entirely taken care of and eliminated." Dr. Kamman, also a witness for employer, was of the same opinion but was not sure that the accident even contributed to his present condition. Dr. Hammes, a witness for the employer, testified that any effect the injury had on employe's condition was temporary; that it only tended to "hasten the progress of the disease"; and that "in the natural course of his illness, it would have taken him about two years longer to develop this condition if he had not had the accident, to the point where he would be disabled." Based on this testimony, the employer contends that, even if employe is entitled to compensation benefits, they should be limited to two years.

It is well settled that an accident which causes an "actual aggravation of an existing infirmity" is compensable. Walker v. Minnesota Steel Co. 167 Minn. 475, 477, 209 N. W. 635, 636; Westereng v. City of Morris, 205 Minn. 219, 222, 285 N. W. 717, 719. In the latter case we said:

"If the employe's infirmity was in fact 'accelerated by the injuries' to his head, his widow 'should recover. Compensation would follow, not on the theory that the injuries caused the malady or disease—that was already present—but because of the effect of such injuries upon the disease.'"

The rule is not limited to cases where a latent malady is caused to flare up by an accidental injury, but applies equally to aggravation or acceleration of any existing infirmity. Westereng v. City of Morris, *supra*. The necessary element is that the accidental injury actually contributed to the present disability. Conflicts in medical opinions, like those in other testimony, must be resolved by the triers of fact. Here there was a direct conflict on the vital issue in the case between the view of employe's doctor and the views of the doctors who testified for the employer. The commission accepted the testimony of Dr. Hengstler and awarded compensation. Under our oft-repeated rule, we cannot go beyond its determination. Westereng v. City of Morris, *supra;* Jones v. Excelsior Laundry Co. 183 Minn. 531, 237 N. W. 419; Wicks v. Northland Milk & Ice Cream Co. 184 Minn. 540, 239 N. W. 614.

An attorney's fee of $100 is allowed respondent.

Writ discharged and order affirmed.

